**IN THE UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF GEORGIA**
**ATLANTA DIVISION**

**SCOTT ALEXANDER,**
                **Plaintiff,**                                        **Civil Action Number:**

**v.**

**ARKE SYSTEMS,**
          **Defendant.**

## COMPLAINT

Scott Alexander ("Alexander") brings this Complaint against Arke Systems,

LLC ("Arke") and shows the Court as follows:

### INTRODUCTION

1.

This is an FMLA and ADA case.  Alexander suffers from an illness that

qualifies as a "serious health condition" that term is used in both the Family and

Medical Leave Act and the Americans with Disabilities Act. Arke employed

Alexander as its Vice President of Experience Design.  On or about September 15,

2017, Alexander began a leave of absence in order to receive treatment for this

serious health condition.  Arke terminated Alexander's employment for pretextual

reasons approximately six (6) weeks after that leave began.

## JURISDICTION AND VENUE

### 2.

This Court has subject matter jurisdiction over the present action under Article III, § 2 of the United States Constitution and 28 U. S.C. § 1331 because this case arises under the FMLA and ADA.

### 3.

Venue properly lies in the Northern District of Georgia under 28 U.S.C. § 1391 because Arke is located in this judicial district and the events giving rise to the claims herein arose in this judicial district.

## THE PARTIES

### 4.

Arke is a limited liability company organized under the laws of the State of Georgia.

### 5.

At all times material hereto, Arke has been registered to do business in the State of Georgia.

### 6.

Arke may be served with process through its registered agent, Courtney Stoll, located at 3400 Peachtree Road, Suite 200, Atlanta, Georgia, 30326.

7.

Arke is subject to the personal jurisdiction of this Court.

8.

Alexander is a natural person that resides within Cobb County, Georgia.

9.

Arke employed Alexander as a Vice President of Experience Design beginning on August 5, 2016.

10.

Arke terminated Alexander's employment on October 31, 2017.

11.

Arke employed Alexander continuously from August 5, 2016 through October 31, 2017.

12.

On April 26, 2018, Alexander filed a Charge of Discrimination (Charge No. 410-2018-05231) with the Equal Employment Opportunity Commission ("EEOC").

13.

Alexander filed his Charge of Discrimination within 180 days of October 31, 2017.

14.

On September 28, 2018, the EEOC issued Alexander a Notice of Right to Sue.

15.

This action is commenced within 90 days of Plaintiff's receipt of the Notice of Right to Sue.

**A. ADA Coverage**

16.

At all times material hereto, Alexander has been a person with a disability within the meaning of the ADA, as amended, 42 U.S.C. §12102(1)(A), (B).

17.

At all times material hereto, Alexander has suffered from a mental or physical impairment that substantially limited one or more major life activities.

18.

At all times material hereto, Defendant regarded Alexander as suffering from a mental or physical impairment that substantially limited one or more major life activities.

19.

At all times material hereto, Alexander was qualified to perform the essential functions of his position with reasonable accommodation, to wit, a period of medical leave to permit him to undergo treatment for his medical condition.

**B. FMLA Coverage**

20.

Arke employed Alexander for more than twelve consecutive months immediately prior to October 31, 2017.

21.

Arke employed Alexander for more than 1250 hours during the twelve consecutive months immediately prior to October 31, 2017.

22.

At all times material hereto, Alexander has been an "eligible employee" of Arke within the meaning of the FMLA, 29 U.S.C. § 2611(2).

23.

Arke employed fifty (50) or more employees within seventy-five (75) miles of the worksite at which it employed Alexander each working day during each of at least twenty (20) calendar workweeks in 2017.

24.

Arke employed fifty (50) or more employees within seventy-five (75) miles of the worksite at which it employed Alexander each working day during each of at least twenty (20) calendar workweeks in 2018.

25.

At all times material hereto, Arke has been an "employer" within the meaning of the FMLA, 29 U.S.C. § 2611 (4).

26.

At all times material hereto, Arke has been engaged in or has affected interstate commerce.

**C. Plaintiff's medical leave and termination**

27.

Alexander suffers from an illness which constitutes a "serious health condition" within the meaning of 29 U.S.C. § 2611 (11).

28.

Alexander's serious health condition constitutes a "disability" within the meaning of 42 U.S.C. § 12102(1)(A).

29.

On or about August 31, 2017, Alexander notified Arke's executive team of his serious health condition.

30.

On or about August 31, 2017, Arke became aware of Alexander's serious health condition.

31.

On or about September 8, 2017, Alexander discussed his serious health condition and treatment plan with Arke's CEO, Eric Stoll.

32.

On or about September 13, 2017, Stoll recommended to Alexander that he begin a leave of absence to undergo treatment for his serious health condition.

33.

On or about September 13, 2017, Alexander requested that Arke grant him leave so that he may seek treatment for his serious health condition.

34.

On or about September 15, 2017, Arke approved Alexander's request for this leave.

35.

On or about September 15, 2017, Arke provided Alexander with a U.S. Department of Labor Notice of Eligibility and Rights and Responsibilities form (hereafter "the FMLA Eligibility Notice").

36.

The Eligibility Notice stated that Alexander's request for FMLA was approved.

37.

The Eligibility Notice stated that Alexander was considered a "key employee".

38.

The Eligibility Notice stated that Arke had determined that restoring Alexander to "employment at the conclusion of FMLA Leave will cause substantial and grievous economic harm to" Arke.

39.

The Eligibility Notice failed to state the basis for Arke's finding that restoring Alexander to employment at the conclusion of leave would cause substantial and economic injury to Arke.

40.

The Eligibility Notice failed to state a reasonable time in which Alexander could return to work.

41.

At all times material hereto, Arke failed to provide Alexander with a written explanation of the basis for its finding that restoring Alexander to employment at the conclusion of leave would cause substantial and economic injury to Arke.

42.

Arke failed to determine in good faith that that restoring Alexander to employment at the conclusion of leave would cause substantial and economic injury to Arke.

43.

Arke notified Alexander that his FMLA leave was to end no later than December 28, 2017.

44.

While on leave, Alexander regularly communicated with Stoll by telephone.

45.

While on leave, Alexander regularly communicated with Stoll via Skype.

46.

On or about October 12, 2017 Alexander met with Stoll.

47.

During this meeting Alexander discussed with Stoll his serious health condition, progress and his plans for transitioning back to work for Arke in December 2017.

48.

At all times during this leave, Alexander made Arke aware that he sought to return on or before the conclusion of his leave.

49.

At all times during this leave, Arke was aware that Alexander sought to return to work for Arke at the conclusion of his leave.

50.

On or about October 31, 2017, Stoll and Arke's CMO, Chris Spears, met with Alexander.

51.

During this meeting, Stoll and Spears informed Alexander that they believed that his return to work at Arke would disrupt the corporate team.

52.

On or about October 31, 2017 and at all times thereafter, Arke denied Alexander access to his Company e-mail account.

53.

On or about October 31, 2017, Arke terminated Alexander's employment.

54.

Alexander was away from work for the purpose of seeking treatment for his serious health condition from September 15, 2017 through October 31, 2017.

55.

The reasons Stoll and Spears articulated to Alexander for Arke's decision to terminate Alexander's employment were pretextual.

56.

Arke terminated Alexander's employment because of his disability.

57.

Arke terminated Alexander's employment because he exercised his right to take a medical leave to receive treatment for a serious medical condition.

58.

Arke failed to engage Alexander in a constructive dialog in an attempt to identify a reasonable accommodation for his disability.

59.

A reasonable accommodation for Alexander's disability existed, to wit: a continuation of his leave through December 28, 2017.

60.

Arke failed to provide a reasonable accommodation to Alexander's disability.

61.

Arke terminated Alexander's employment in violation of the ADA.

62.

Arke terminated Alexander's employment in violation of the FMLA.

63.

Arke interfered with Alexander's exercise of rights under the FMLA.

64.

As a result of Arke's unlawful termination of his employment, Alexander has suffered loss of income and other employment benefits.

65.

As a result of Arke's unlawful termination of his employment, Alexander has suffered severe emotional distress.

## COUNT I

## INTERFERENCE WITH, RESTRAINT OF, AND DENIAL OF RIGHTS PROVIDED BY THE FAMILY AND MEDICAL LEAVE ACT

66.

The allegations in all previous paragraphs are incorporated by reference as if fully set out in this paragraph.

67.

As set out above, Alexander was eligible for leave protected by the FMLA.

68.

At all times during his leave, Arke knew that Alexander was planning on returning to work.

69.

Arke failed to provide Alexander with a written explanation of its finding that restoration of Alexander to employment would result in substantial and grievous economic harm as required by 19 CFR § 852.219(b).

70.

As a result of Arke's failure to provide notice as required by 19 CFR § 852.219(b), Arke forfeited its right to deny Alexander even if substantial and grievous economic injury would have resulted from his reinstatement.

71.

Arke failed and refused to reinstate Alexander to his former position or to an equivalent position at the conclusion of his FMLA leave.

72.

Arke's failure to reinstate Alexander to his former position or to an equivalent position constitutes interference with, restraint of and denial of the rights afforded Plaintiff by the FMLA.

73.

As a direct and proximate result of Arke's unlawful conduct, Alexander suffered loss of employment, loss of income, and loss of vacation, retirement and healthcare benefits.

74.

As a direct and proximate result of Arke's unlawful conduct, Alexander is entitled to recover from Defendant the wages, salary, and employment benefits he has lost as a result of their unlawful conduct, and interest thereon, calculated at the prevailing rate.

75.

As a direct and proximate result of Arke's unlawful conduct, Alexander is entitled to liquidated damages in addition to the compensation alleged above in accordance with the FMLA, 29 U.S.C. §2617(a)(1).

76.

As a direct and proximate result of Arke's unlawful conduct, Alexander is entitled to be reimbursed for costs of litigation, including his reasonable attorneys' fees,

## COUNT II

## VIOLATION OF THE AMERICANS WITH DISABILITY ACT

77.

The allegations in all previous paragraphs are incorporated by reference as if fully set out in this paragraph.

78.

At all times material hereto, Alexander was an employee within the meaning of 42 U.S.C. § 12111(4).

79.

At all times material hereto, Arke was an "employer" within the meaning of 42 U.S.C. § 12111(5).

80.

At all times material hereto, Alexander was a qualified individual with a disability within the meaning of 42 U.S.C. § 12111(8).

81.

At all times material hereto, Alexander was a qualified individual perceived as having a disability within the meaning of 42 U.S.C. § 12111(8).

82.

Arke terminated Alexander's employment because of his disability.

83.

Arke willfully terminated Alexander's employment because of his disability.

84.

Arke terminated Alexander's employment with reckless indifference to rights protected under Title I of the ADA.

85.

Arke discriminated against Alexander in violation of 42 U.S.C. § 12112(b)(5)(B) by terminating Alexander's employment because of his known or perceived disability.

86.

As a result of Arke's unlawful conduct, Alexander suffered pecuniary and non-pecuniary damages, including lost wages and benefits, out-of-pocket expenses, loss of enjoyment, and emotional distress, the exact amount of which will be determined at trial.

87.

As a result of Arke's unlawful conduct, Alexander is entitled to declaratory and injunctive relief, award of lost employment benefits and wages, back pay, front pay, reinstatement, interest, compensatory damages, costs, attorney's fees, and any and all such other relief that may be appropriate.

## COUNT III

## VIOLATION OF 42 U.S.C. § 12112(b)(5)(A)
## (ADA FAILURE TO ACCOMODATE)

88.

The allegations in all previous paragraphs are incorporated by reference as if fully set out in this paragraph.

89.

Arke failed and refused to engage Alexander in a discussion to determine if a reasonable accommodation existed that would allow Alexander to perform the essential functions of his position.

90.

Arke violated the ADA by failing and refusing to engage Alexander in a discussion to determine if a reasonable accommodation existed that would allow Alexander to perform the essential functions of his position.

91.

Arke violated the ADA by refusing to make a reasonable accommodation for Alexander's known or perceived disability.

92.

Arke discriminated against Alexander in violation of the 42 U.S.C. § 12112(b)(5)(A) by failing to make a reasonable accommodation to his disability.

93.

Arke willfully violated the ADA by refusing to make a reasonable accommodation for Alexander's known or perceived disabilities.

94.

Arke with reckless indifference to rights secured by Title I of the ADA by refusing to make a reasonable accommodation for Alexander's known or perceived disabilities.

95.

As a result of Arke's unlawful conduct, Alexander has suffered pecuniary and non-pecuniary damages, including lost wages and benefits, out-of-pocket expenses, loss of enjoyment, and emotional distress, the exact amount of which will be determined at trial.

96.

As a result of Arke's unlawful conduct, Alexander is entitled to declaratory and injunctive relief, award of lost employment benefits and wages, back pay, front pay, reinstatement, interest, compensatory damages, costs, attorney's fees, and any and all such other relief that may be appropriate.

WHEREFORE, Alexander respectfully prays:

1. That he be awarded compensatory damages against Defendant in an amount to be determined at trial for lost pay, vacation, retirement and healthcare benefits, as well as interest on all applicable amounts calculated at the prevailing rate.

2. That he be awarded a like amount in liquidated damages;

3. That he be awarded punitive damages because of Defendants reckless indifference to rights protected under Title I of the ADA;

4. That the Court order Arke to reinstate him to his former position or award him front pay against Defendant in lieu of reinstatement;

5. That he be awarded his costs of litigation against Defendant including his reasonable attorneys' fees from Defendant;

6. That he be awarded nominal damages, and

7. For such other and further relief as the Court deems just and proper.

Respectfully submitted,


3100 CENTENNIAL TOWER
101 MARIETTA STREET
ATLANTA, GEORGIA 30303
(404) 979-3150
(404) 979-3170 (f)
charlesbridgers@dcbflegal.com
kevin.fitzpatrick@dcbflegal.com

DELONG CALDWELL BRIDGERS
FITZPATRICK & BENJAMIN, LLC

/s/CHARLES R. BRIDGERS
CHARLES R. BRIDGERS
GA. BAR NO. 080791

/s/ KEVIN D. FITZPATRICK, JR.
KEVIN D. FITZPATRICK, JR.
GA. BAR NO. 262375

COUNSEL FOR PLAINTIFF